UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES A. SCHMIDT, et al., | No. 1:17-cv-01411-DAD-MJS |
| Plaintiffs, | |
| v. | ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES |
| CITY OF MODESTO, et al., | |
| Defendants. | (Doc. No. 30) |

This matter is before the court on plaintiffs' motion for attorneys' fees. (Doc. No. 30.) On June 19, 2018, that motion came before the court for hearing. Attorney Panos Lagos appeared on behalf of plaintiffs, and attorney Robert Moutrie appeared on behalf of defendants. Having considered the parties' briefing, and having heard the oral arguments of counsel, the court will grant plaintiffs' motion in part.

**BACKGROUND**

Plaintiffs filed their complaint on October 18, 2017 (Doc. No. 1), alleging claims based on an encounter between members of the Modesto Police Department and Garrett James Schmidt, plaintiffs' son. According to the complaint, on October 24, 2016, defendants responded to a 9-1-1 call regarding a man under the influence who had forced himself into a home. (*Id.* at ¶ 20.) Defendants apprehended Garrett Schmidt and handcuffed him, after which they repeatedly deployed their Tasers against him. (*Id.*) This caused Garrett Schmidt to enter cardio pulmonary

1

arrest, leading to an anoxic brain injury, coma, and ultimately his death on October 27, 2016. (*Id.*)

Defendants filed a motion to dismiss on December 19, 2017. (Doc. No. 10.) While that motion was pending, plaintiffs provided notice to the court that they had accepted defendants' offer of judgment pursuant to Federal Rule of Civil Procedure 68, resulting in a monetary award to plaintiffs of $75,000.01. (Doc. No. 22.) The parties thereafter stipulated to dismissal of all claims, but requested that the court retain jurisdiction over the issue of the award of attorneys' fees and costs. (Doc. No. 26.) Pursuant to that stipulation, on May 10, 2018, plaintiffs filed their motion for attorneys' fees. (Doc. No. 30.)

Plaintiffs seek the following in attorneys' fees and costs. First, they seek fees totaling $54,161.25 for the services of attorney Panos Lagos, consisting of 65.65 hours worked at a rate of $550 per hour, plus a multiplier of 1.5. (Doc. No. 30-1 at 6.) Second, plaintiffs seek $1,155.00 for the services of attorney Sanjay S. Schmidt, consisting of 2.2 hours worked at a rate of $350 per hour, plus a multiplier of 1.5. (*Id.*) Third, plaintiffs seek $606.25 for the services of paralegal Alicia Hubbs, consisting of 4.85 hours worked at a rate of $125 per hour. (*Id.*) Finally, plaintiffs seek $400 in costs to cover the filing fee in this case. (*Id.* at 4.) These amounts total a combined award of $56,322.50 in attorneys' fees and costs. Defendants filed an opposition on May 17, 2018, seeking a reduction both in the number of hours reasonably expended by plaintiffs' counsel and the hourly attorney fee rates sought by plaintiffs. (Doc. No. 31.) Plaintiffs filed a reply on May 24, 2018. (Doc. No. 33.)

**LEGAL STANDARD**

In an action brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The Supreme Court has explained the historical underpinnings and purpose of § 1988(b) as follows:

> In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975), this Court reaffirmed the "American Rule" that each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary. In response Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42

2

> U.S.C. § 1988, authorizing the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation. The purpose of § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances. H.R. Rep. No. 94–1558, p. 1 (1976). Accordingly, a prevailing plaintiff "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" S. Rep. No. 94–1011, p. 4 (1976), U.S. Code Cong. & Admin. News 1976, p. 5912 (quoting *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968)).

*Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (parallel citations omitted); *see also Mendez v. County of San Bernardino*, 540 F.3d 1109, 1124 (9th Cir. 2008); *Sable Commc'ns v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 193 (9th Cir. 1989). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437; *see also Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006).[1]

"The Supreme Court has stated that the lodestar is the 'guiding light' of its fee-shifting jurisprudence, a standard that is the fundamental starting point in determining a reasonable attorney's fee." *Van Skike v. Director, Office of Workers' Comp. Programs*, 557 F.3d 1041, 1048 (9th Cir. 2009) (quoting *City of Burlingtion v. Dague*, 505 U.S. 557, 562 (1992)); *see also Rouse v. Law Offices of Rory Clark*, 603 F.3d 699, 704 (9th Cir. 2010), *abrogated on other grounds by Marx v. General Revenue Corp.*, 568 U.S. 371 (2013). Accordingly, a district court is required "to calculate an award of attorneys' fees by first calculating the 'lodestar' before departing from it." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008) (quoting *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000)). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* at 978 (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The number of hours to be compensated is calculated by considering whether, in light of

---

[1] "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992)); *see also Ruff v. County of Kings*, 700 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010).

the circumstances, the time could reasonably have been billed to a private client."); *Caudle*, 224 F.3d at 1028; *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). Applying these standards, "a district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 434); *see also Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 955 (9th Cir. 2007).

The lodestar figure is presumptively reasonable. *Dague*, 505 U.S. at 562 ("We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee . . . ."); *Rouse*, 603 F.3d at 704; *Crawford v. Astrue*, 586 F.3d 1142, 1149 (9th Cir. 2009). Accordingly, "[a]djustments to the lodestar amount are allowed only if circumstances warrant . . . and are reserved for rare or exceptional cases." *Rouse*, 603 F.3d at 704 (internal quotation marks and citations omitted). In light of these governing standards, any adjustments to the lodestar must be carefully tailored, drawing from a finite pool of factors relevant to the reasonableness determination and only to the extent a factor has not been subsumed within the lodestar calculation. *See Camacho*, 523 F.3d at 982 (citing the factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). Those factors include the preclusion of other employment by the attorney due to acceptance of the case; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *Rouse*, 603 F.3d at 705; *see also Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).

Finally, in applying these legal standards the court is cognizant of the following guidance provided by the Ninth Circuit:

> Lawyers must eat, so they generally won't take cases without a reasonable prospect of getting paid. Congress thus recognized that private enforcement of civil rights legislation relies on the availability of fee awards: "If private citizens are to be able to assert their civil rights, and if those who violate the Nation['s] fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." S. Rep. No. 94–1011, at 2 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5908, 5910 (footnote omitted). At the same time, fee

4

> awards are not negotiated at arm's length, so there is a risk of overcompensation. A district court thus awards only the fee that it deems reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 40 (1983). The client is free to make up any difference, but few do. As a practical matter, what the district court awards is what the lawyer gets.
>
> In making the award, the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases, *City of Riverside v. Rivera*, 477 U.S. 561, 579–80 (1986), and avoiding a windfall to counsel, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984) (quoting S. Rep. No. 94–1011, at 6 (1976)).

*Moreno*, 534 F.3d at 1111. With this guidance in mind, the court turns to the fee application in this civil rights action.

## ANALYSIS

Defendants articulate three grounds upon which the court should decline to award plaintiffs' counsel attorneys' fees in the amount they seek. First, defendants argue that the hourly rates proposed by plaintiffs are higher than the rates normally awarded in similar cases brought in the Fresno Division of the Eastern District of California. Second, defendants claim that the number of hours purportedly expended by plaintiffs' counsel in this case is excessive relatively to the amount of litigation that occurred. Third, defendants contend that the results of this case do not support the award of a multiplier. Each of defendants' arguments is addressed in turn below.

**A.  The Reasonableness of the Hourly Rate**

Defendants first take issue with the hourly rates requested by attorneys Lagos and Schmidt of $550 and $350, respectively. Defendants contend that based on the nature of the litigation and the prevailing hourly rates for similar cases in the Fresno Division of the Eastern District of California, rates of $325 and $295 are more appropriate. Defendants also seek a reduction in hourly fees for paralegal Alicia Hubbs from $150 per hour to $100 per hour.

In assessing fee applications, the reasonable hourly rates are calculated according to the prevailing market rates in the relevant legal community. *Blum*, 465 U.S. at 895; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013); *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) ("We have held that '[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of

comparable skill, experience, and reputation.'") (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986)); *Van Skike*, 557 F.3d at 1046; *Carson*, 470 F.3d at 891. Typically, the "relevant legal community" is the forum district[2] and that the local hourly rates for similar work should normally be employed. *Gonzalez*, 729 F.3d at 1205; *Prison Legal News*, 608 F.3d at 454; *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994); *Deukmejian*, 987 F.2d at 1405.

According to a declaration submitted by attorney Lagos, he has been admitted to practice law in the State of California since December 1974. (Doc. No. 30-1 ("Lagos Decl.") at ¶ 2.) Since 1976, he has operated the Law Offices of Panos Lagos. (*Id.* at ¶ 3.) Since 2009, he has specialized in civil rights/police misconduct litigation; prior to that time, he engaged in general civil litigation with an emphasis on landlord-tenant rights, class actions, affirmative tort litigation, and the prosecution and defense of unlawful detainer proceedings. (*Id.* at ¶¶ 3–4.) He states that he has tried over fifty cases to a jury. (*Id.* at ¶ 5.) The court is satisfied that attorney Lagos has

---

[2] The undersigned recognizes that judges in the Eastern District of California have sometimes distinguished between Fresno and Sacramento in determining appropriate hourly rates but questions that approach. First, unlike true multiple division districts, by Local Rule the Eastern District is not divided into separate divisions but rather merely designates Sacramento and Fresno as the two locations where court is in continuous session within the district. *See* Local Rule 120(a). Second, the general rule for awarding attorneys' fee rates, is that "the rates of attorneys practicing in the forum *district*" are used. *Deukmejian*, 987 F.2d at 1405 (emphasis added). The ultimate task of the court is to discern the "prevailing market rates in the relevant community." *See Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). This court has located no authority indicating that hourly rates for attorneys in Sacramento may not be used to guide the court's award of such fees in cases litigated in the Fresno courthouse, particularly in specialized fields of litigation such as civil rights cases. *See Mitchell v. Chavez*, No. 1:13-cv-01324-DAD-EPG, 2018 WL 3218364, at *5 (E.D. Cal. June 29, 2018). Again, the typical approach looks to the *district* in which the court sits. *See Gonzalez*, 729 F.3d at 1206 (noting the appropriate rate was "the market rate prevailing in the Central District of California"); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (using the "Northern District of California" as the relevant legal community); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (same); *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991) (using the Western District of Washington as the relevant local community), *overruled on other grounds as recognized in Davis v. City & County of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992). *But see Vega v. Eatherford U.S. LP*, No. 1:14-cv-01790-JLT, 2016 WL 7116731, at *16 (E.D. Cal. Dec. 7, 2016) (concluding that within the Eastern District of California the appropriate forum for determining the lodestar rate is the division of the District in which the case is filed) (quoting *Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011)).

6

substantial experience, both generally as a litigator and, in particular, as a specialist in civil rights/police misconduct cases such as this one.

That said, fees at the rate of $550 per hour as requested by attorney Lagos here are at the high end of those previously found appropriate in the Eastern District of California. *See Trujillo v. Singh*, No. 1:16-cv-01640-LJO-EPG, 2017 WL 1831941, at *2 (E.D. Cal. May 8, 2017) (finding $455 per hour for attorneys with eleven to fifteen years' experience and $154 per hour for paralegals to be reasonable rates, but awarding requested rates of $300 and $115 per hour, respectively); *Z.F. ex rel. M.A.F. J.F. v. Ripon Unified Sch. Dist.*, No. 2:10-cv-00523-TLN-CKD, 2017 WL 1064679, at *3 (E.D. Cal. Mar. 21, 2017); ("Prevailing hourly rates in the Eastern District of California are in the $350–$550/hour range for experienced attorneys with over 15 years of experience in civil rights and class action litigation."); *Truisson v. Cty. of San Joaquin Dist. Attorney's Office*, No. 2:11-cv-02986-KJM-DAD, 2014 WL 5472787, at *5–6 (E.D. Cal. Oct. 28, 2014) (finding an experienced civil rights attorney's $450 per hour rate reasonable in the prevailing community in an employment discrimination action); *Deocampo v. Potts*, No. 2:06-cv-1283-WBS-CMK, 2014 WL 4230911, at *4 (E.D. Cal. Aug. 25, 2014) (awarding up to $400 per hour).

Both parties refer to the recent order in *Beidleman v. City of Modesto*, 1:16-cv-01100-DAD-SKO (E.D. Cal. Mar. 13, 2018), in which the undersigned noted that "[t]his court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and between $545 and $695 for senior counsel and partners." *Beidleman*, 2018 WL 1305713, at *6 (collecting cases). Plaintiffs contend that this language supports attorney Lagos's requested amount, given his skill and experience. For their part, defendants question the order in *Beidleman* altogether, observing that the hourly rates cited in that case "seem disproportionately high." (Doc. No. 31 at 4 n.2.) In addition, defendants attempt to distinguish this case by noting that *Beidleman* concerned specialized class action litigation involving claimed violations of the Fair Labor Standards Act. Thus, defendants contend that *Beidleman* did not involve "similar work" to the work performed by counsel here and provides no support for attorney Lagos's requested rates.

Both sides miss the mark to some extent in their reliance upon or distinguishing of this court's order in *Beidleman*. That case, unlike this one, was a common fund class action case in which the court awarded the prevailing attorneys a percentage of the total recovery. The court's discussion of attorneys' fees in that case occurred in the context of a lodestar cross-check, which courts employ as "a check on the reasonableness of the percentage award." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Under such circumstances, a determination of the lodestar amounts only to a "rough calculation." *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-01662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)); *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting.'") (quoting *Covillo v. Specialtys Café*, No. C–11–00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014)). Even were that not the case, in conducting the cross-check in *Beidleman*, it was noted that the maximum hourly rate applied was $400, far below what attorney Lagos seeks here.

Attorney Lagos also submits a declaration from attorney Richard M. Pearl. (Lagos Decl. at 37–62.) Mr. Pearl avers in his declaration that he is an attorney whose practice focuses almost exclusively on issues related to court-awarded attorneys' fees. (*Id.* at 38.) He states that he has been frequently called to opine in court on the reasonableness of attorneys' fees, and concludes that in this case, the hourly rates requested by attorney Lagos are well within the range of hourly rates charged by similarly qualified and experienced attorneys for reasonably similarly services in the San Francisco Bay Area. (*Id.* at 41–43.) Of course, the San Francisco Bay Area is not located within the Eastern District of California. Accordingly, attorney Pearl's declaration is relevant to this court's determination of the reasonable hourly rates only if attorney Lagos has established that out-of-forum rates are applicable here.

Rates from outside the forum district "may be used 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*,

132 F.3d 496, 499 (9th Cir. 1997) (quoting *Gates*, 987 F.2d at 1405). District courts in the Eastern District of California have permitted the use of out-of-forum hourly rates where (1) there is a pre-existing relationship between counsel and plaintiff; (2) there are a lack of attorneys who handle the particular type of case being brought; or (3) plaintiff demonstrates that they made an affirmative attempt to secure local counsel and were unable to do so, for varying reasons. *See Wright v. Tehachapi Unified Sch. Dist.*, No. 1:16-cv-01214-JLT, 2017 WL 3334015, at *4–5 (E.D. Cal. Aug. 4, 2017) (awarding out-of-forum rates based on unavailability of "private attorneys who focus on representing disabled school children who reside in Tehachapi and Kern County") (internal quotations omitted), *aff'd*, ___ Fed. App'x ___, ___, 2018 WL 6068599 (9th Cir. Nov. 20, 2018); *Shany Co., Ltd. v. Crain Walnut Shelling, Inc.*, No. 2:11–CV–01112–KJM–EFB, 2015 WL 351660, at *6 (E.D. Cal. Jan. 23, 2015) (awarding out-of-forum rates where counsel was retained prior to litigation to represent it at arbitration in a different forum); *S. Yuba River Citizens League & Friends of River v. Nat'l Marine Fisheries Serv.*, No. CIV. S–06–2845 LKK/JFM, 2012 WL 1038131, at *6 (E.D. Cal. Mar. 27, 2012) (awarding out-of-forum rates where plaintiffs had sent letters to seven law firms soliciting representation but were unable to obtain local counsel); *Yenidunya Invs., Ltd. v. Magnum Seeds, Inc.*, No. 2:11–1787 WBS, 2012 WL 538263, at *7 (E.D. Cal. Feb. 17, 2012) (granting request to use out-of-forum rates because attorneys had prior history with both the client and the dispute at issue); *Edwards v. City of Colfax*, No. CIV S–07–2153 GEB EFB, 2011 WL 572171, at *8 (E.D. Cal. Feb. 15, 2011) (awarding out-of-forum rates based on declarations establishing that they sought representation from ten attorneys, but each either lacked the requisite experience, had conflicts of interest, or were otherwise unwilling to take the case); *Roe v. Saenz*, No. CIV–S–97–0529DFL JFM, 2000 WL 33128689, at *3 (E.D. Cal. Nov. 20, 2000) (awarding out-of-forum rates based on declarations from plaintiff that there "is no private market for contingent public benefits class action litigation").

A review of attorney Lagos's motion reveals that it provides no support for application of these exceptions in this case. There is no allegation that counsel had a prior relationship with plaintiff. There is similarly no contention by plaintiffs that qualified attorneys do not exist within

the Eastern District of California. The undersigned notes that civil rights actions alleging the excessive use of force are frequently brought in this court and successfully litigated by counsel located within this district. Finally, there is nothing before the court in connection with plaintiff's motion establishing that plaintiff made an affirmative, but unsuccessful, attempt to secure local counsel. Under the governing legal standards, the court must therefore apply prevailing rates within the Eastern District of California.

Attorney Lagos's experience as an attorney, as well as his skill demonstrated in this litigation, militate in favor of an hourly rate at the higher end of the scale. Although much of his legal experience is concentrated in areas other than civil rights litigation, attorney Lagos has devoted his practice to civil rights litigation for almost ten years. Based on attorney Lagos's experience and qualifications, the court finds that an hourly rate of $400 per hour is reasonable.

With respect to attorney Schmidt, defendants seek a reduction in his hourly fee from $350 to $295. According to a declaration submitted by attorney Schmidt, he was admitted to practice in California in December 2006. (Doc. No. 30-2 ("Schmidt Decl.") at ¶ 3.) From 2007 until 2010, he was employed at the San Joaquin County Public Defender's Office. (*Id.* at ¶ 4.) Beginning in 2010, attorney Schmidt became a solo practitioner, initially focusing on criminal defense but eventually transitioning into the areas of civil rights/police misconduct and personal injury. (*Id.* at 5.) Based on attorney Schmidt's experience, both as an attorney in general and as a practitioner of civil rights/police misconduct litigation, the court finds that an hourly rate of $300 is reasonable.

Finally, the court addresses the reasonable hourly rate of paralegal Hubbs. "In this division, the reasonable rate of compensation for a paralegal would be between $75.00 to $150.00 per hour depending on experience." *Moreno v. Comm'r of Soc. Sec.*, No. 1:16-cv-1600-SAB, 2018 WL 2388805, at *3 (E.D. Cal. May 25, 2018) (citing *Sanchez v. Frito–Lay, Inc.*, No. 1:14–cv–00797 AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), *report and recommendation adopted*, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015)); *see also Trujillo v. Singh*, No. 1:16-cv-01640-LJO-EPG, 2017 WL 1831941, at *3 (E.D. Cal. May 8, 2017) (awarding rates to paralegals of $95 and $115 per hour, depending on experience). In support of

her request, Ms. Hubbs submits a declaration stating that she has been employed as attorney Lagos's paralegal since July 17, 2002. (Doc. No. 30-3 ("Hubbs Decl.") at ¶ 1.) In addition, she has been attorney Lagos's paralegal on thirty-three civil rights cases litigated since 2009.

Defendants mischaracterize plaintiffs' request with respect to paralegal Hubbs: Ms. Hubbs is requesting an hourly rate of $125 per hour, rather than $150 per hour as stated by defendants. (*Compare* Doc. No. 31 at 6, *with* Hubbs Decl. at ¶ 6.) Considering Ms. Hubbs's substantial paralegal experience, the court finds that an hourly rate of $125 is reasonable.

Before concluding this discussion, the undersigned notes that although the hourly rate it has found appropriate for attorney Lagos is at the high end of hourly rates recently awarded to civil rights attorneys within the Eastern District of California, that rate is nonetheless well below the amount sought by plaintiffs' counsel. Indeed, attorney Lagos candidly acknowledged at oral argument that he brought this motion because he believed the prevailing rates awarded in civil rights actions in which plaintiffs have prevailed in this District to have been generally too low. The undersigned is mindful of this concern, and in a future case would be willing to reconsider whether the rates being employed accurately reflect prevailing attorney compensation within the Eastern District. However, in the fee application pending before the court in this case attorney Lagos has not provided sufficient evidence calling the determination of the prevailing rates in the Eastern District of California into question. The Pearl Declaration and the materials accompanying it discuss prevailing rates within the Northern District of California in great detail, but no similar information was provided as to prevailing rates in the Eastern District. Lacking such evidence, the court has nothing to rely upon other than those hourly rates previously found generally reasonable in this district. See *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("[R]ate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.").

**B.     The Reasonableness of Hours Expended**

Next, defendants take issue with the number of hours expended by attorney Lagos and paralegal Hubbs in litigating this case. Attorney Lagos claims a total of 65.65 hours expended on

/////

this case, while defendants contend that the total hours reasonable expended was 47.1. In addition, defendants seek to reduce paralegal Hubbs's hours from 4.85 to 3.65.

A district court is empowered to determine the number of hours reasonably spent on litigation, and may reduce the numbers submitted by the prevailing party upon a determination that "the hours expended are deemed excessive or otherwise unnecessary." *Chalmers*, 796 F.2d at 1210. District courts are accorded discretion to determine the number of hours reasonably expended in furtherance of litigation. *Id.* at 1211 (citing *Harmon v. San Diego County*, 736 F.2d 1329, 1331 (9th Cir. 1984) and *Pate v. Alameda-Contra Costa Transit Dist.*, 697 F.2d 870, 872–73 (9th Cir. 1983)). Nonetheless, "it remains important for the district court to provide 'a concise but clear explanation of its reasons for the fee award.'" *Id.* (quoting *Hensley*, 461 U.S. at 437).

1. <u>Attorney Lagos's Hours</u>

First, defendants seek a reduction in time expended by attorney Lagos on researching and writing his opposition to defendants' motion to dismiss. Collectively, attorney Lagos seeks compensation for 24.5 hours expended in that regard. (Doc. No. 30-1 at 23.) The court observes that plaintiffs' opposition to the defendants' motion to dismiss was well-researched, citing to over forty cases, as well as various statutes and rules of procedure. The court has no basis upon which to conclude that any of the time spent by attorney Lagos in preparing that opposition was unnecessary or superfluous. To the contrary, the court found Mr. Lagos to be an effective advocate for his clients both in his written and oral presentation, with a firm command of the relevant issues. The opposition totaled sixteen pages, working out to roughly two-thirds of a page per hour, including hours spent reviewing defendants' Rule 12(b)(6) motion and conducting research. Such a ratio has been found to be reasonable. *See Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1215 (E.D. Cal. 2009) (noting that "for each hour of attorney time, plaintiff's counsel produced roughly two-thirds of a page of their opposition"); *see also Thao v. Comm'r of Soc. Sec.*, No. CIV S-06-2206-CMK, 2009 WL 737019, at *3 (E.D. Cal. Mar. 19, 2009) (finding that a rate of roughly one page per hour was reasonable when that time did not account for research or reviewing the opposing motion). The court finds the number
/////

12

of hours expended by attorney Lagos in opposing defendants' motion to dismiss to be wholly reasonable.

Next, defendants take issue with six hours of attorney Lagos' time billed for a meeting with clients regarding the filing of the case. Defendants seek to reduce that amount from six hours to three, arguing that six hours is unnecessarily long, and that, in any event, attorney Lagos had spent 1.5 hours meeting with his clients prior to the six-hour meeting. (Doc. No. 31 at 7.)

At oral argument on the pending motion, attorney Lagos explained that the second, more lengthy meeting was held at the request of his clients. Specifically, plaintiffs sought to have attorney Lagos meet with a relative—who is also an attorney—to better explain the case. The court is satisfied with this explanation, finds that the hours were reasonably expended by counsel, and declines to reduce the hours billed by plaintiffs' counsel with respect to this client meeting.

Defendants next contend that all billed attorney hours between March 1 and March 9, 2017, totaling 3.3 hours, should not be compensated, since attorney Lagos had not yet been retained by plaintiffs at that time. (*See* Lagos Decl. at ¶ 9.)

"'[T]he existence of an attorney-client relationship' is a prerequisite to an award of attorney fees." *Gonzalez v. Kangas*, 814 F.2d 1411, 1412 (9th Cir. 1987) (quoting *Brandenburger v. Thompson*, 494 F.2d 885, 889 (9th Cir. 1974)). In California, "the formation of an attorney-client relationship is a question of fact." *Chih Teh Shen v. Miller*, 212 Cal. App. 4th 48, 57 (2012) (citing *Flatt v. Superior Court*, 9 Cal. 4th 275, 281 (1994)). The focus of that factual inquiry is on "intent and conduct," *Canton Poultry & Deli, Inc. v. Stockwell, Harris, Widom, & Woolverton*, 109 Cal. App. 4th 1219, 1228 (2003), and "[w]hen a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established *prima facie*." *Chih Teh Shen*, 212 Cal. App. 4th at 57 (quoting *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999)). Notably, "[a] formal retainer and fee agreement is not necessary." *Id.*

The court is satisfied that an attorney-client relationship existed between attorney Pangos and plaintiffs at the time in question. Plaintiff James Schmidt spoke by telephone with attorney Lagos on March 1, 2018, presumably regarding the possibility of commencing this legal action.

13

As noted, the fact that a retainer fee was not paid at that time is not dispositive as to the existence of an attorney-client relationship. Given the communications between attorney Lagos and plaintiff James Schmidt as of March 1, 2018, the court finds no basis to deduct the hours expended by attorney Lagos during this time.

Finally, defendants seek a 0.25-hour reduction of Mr. Lagos's hours regarding his "telephone conference with Brian Schmidt re: fee agreement" on May 12, 2017. Brian Schmidt is the son of plaintiffs James and Cynthia Schmidt and an attorney who, at the request of his parents, discussed the nature of the fee agreement with Mr. Lagos on his parents' behalf. (Doc. No. 33 at 4.)

Defendants point to one district court case addressing their contention in this regard. In that case, the court ruled that "it is inappropriate for [plaintiff] to bill his client—or, to now ask Defendants to pay—for the administrative task of negotiating a fee agreement with his co-counsel." *Ambriz v. Arrow Fin. Servs., LLC*, No. CV07-5423-JFW (SSX), 2008 WL 2095617, at *5 (C.D. Cal. May 15, 2008). The court concurs and finds that negotiating a fee agreement is not a legal service to the client, and is not compensable as such. Accordingly, the court will reduce the award to Mr. Lagos by 0.25 hours.

2. Ms. Hubbs's Hours

Next, defendants seek a reduction of the hours reasonably expended by paralegal Hubbs. Specifically, defendants seek to reduce her time from 4.85 hours to 3.65 hours, arguing that the extra 1.2 hours consisted of purely clerical tasks rather than paralegal tasks. These tasks include filing the complaint and civil cover sheet, downloading and printing filings, emailing documents to the client for review, and emailing opposing counsel.

"When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (citing *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992)); *accord Tarango v. City of Bakersfield*, No. 1:16-CV-0099-JLT, 2017 WL 5564917, at *15 (E.D. Cal. Nov. 20, 2017) (noting that "filing is a purely clerical task that should be excluded from the lodestar calculation"); *LaToya A. v. S.F. Unified Sch. Dist.*, No. 3:15-CV-04311-LB, 2016 WL 344558, at

14

*9 (N.D. Cal. Jan. 28, 2016) (stating that activities such as mailing documents to clients or forwarding documents to attorneys are "purely clerical work"); *Rojas v. Zaninovich*, No. 1:09-CV-0705-AWI-JLT, 2015 WL 3657172, at *31 (E.D. Cal. June 11, 2015) ("[D]ownloading, printing, and saving documents from PACER" are clerical tasks that should be deducted from a lodestar calculation.).

The court is persuaded that the few billing entries for paralegal Hubbs identified by defendants constitute clerical work, and that plaintiffs are not entitled to include that work in their billable hours calculation. Tasks such as emailing, printing, and filing documents are clerical tasks, not paralegal tasks. Accordingly, the hours expended by Ms. Hubbs will be reduced from 4.85 hours to 3.65 hours.

**C.     Plaintiffs' Entitlement to a Multiplier**

Finally, the court addresses the question of whether the award of a multiplier is appropriate here. Plaintiffs seek a multiplier of 1.5 in calculating their fee award, while defendants oppose such an award.

Both parties agree that in determining whether a multiplier is appropriate, courts consider "(1) the results obtained by plaintiff's counsel; (2) the skill and quality of representation; (3) the novelty and difficulty of the questions involved; (4) the extent to which the litigation precluded other employment by the attorneys; and (5) the contingent nature of the case." *Jadwin*, 767 F. Supp. 2d at 1134–35. However, a lodestar award will normally provide adequate compensation, and therefore a lodestar multiplier is generally awarded only in exceptional circumstances. *See Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552–53 (2010); *Van Gerwen*, 214 F.3d at 1046; *Chalmers*, 796 F.2d at 1212–13 ("[R]ecent Supreme Court authority strongly suggests that an enhanced award is justified only in the extraordinary case."). Below, the court examines each of the five factors to determine whether they support a multiplier.

1.     <u>Results Obtained by Plaintiffs' Counsel</u>

Plaintiffs asserted a variety of claims in this action based on both state and federal law. Prior to the court ruling on defendants' motion to dismiss, the case was resolved with plaintiffs accepting defendants' Rule 68 offer and receiving an award of $75,000.01.

Because no discovery was conducted in this case, it is difficult for the court to assess the strengths of plaintiffs' claims and to make a fair evaluation as to whether this settlement amount was exceptional, such that it might support the award of a multiplier. However, based on this court's experience in similar cases, the court finds the result obtained in this case to be adequate, although not exceptional. Consideration of this factor is thus neutral, at best, with respect to plaintiffs' request for a multiplier.

### 2. Skill and Quality of Representation

The court next considers the skill and quality of representation. As noted above, the court found attorney Lagos to be a very effective advocate for his clients, both in his written and oral submissions to the court. That said, the undersigned finds that the hourly rate arrived at above adequately compensates attorney Lagos for the skill he demonstrated. Although the court has found attorney Lagos to be a quite competent attorney, the court finds no basis justifying application of a multiplier based on the quality of the representation he provided.

### 3. Novelty and Difficulty

Particularly difficult questions of law presented by a case can sometimes justify application of a multiplier. However, here, it would appear that the facts of the case were not particularly novel, nor did this case present unusually difficult legal questions. To the contrary, claims brought under 42 U.S.C. § 1983 and the Bane Act based upon allegations of excessive use of force by law enforcement are all too familiar to this court. Defendants' motion to dismiss, based largely on questions of *Monell* and supervisory liability, raised issues that district courts in this district routinely confront. The court finds that this case, while undeniably tragic, did not present the type of unusual legal issues that might justify the application of a multiplier in the award of fees.

### 4. The Extent to Which Litigation Precluded Other Employment

Next, the court considers whether this litigation could have precluded plaintiffs' counsel from seeking other employment. Plaintiffs' invite the court to speculate in this regard, stating that "[i]t is not difficult to believe that counsel was effectively precluded from other employment, including the months of March 2017 through February 2018."

16

The undersigned has no basis upon which to conclude that pursuing this case precluded plaintiffs' counsel from other employment. Attorney Lagos represents that he has spent only roughly 65 hours on this case over the course of one calendar year. That amounts to an average of five and a half hours per month, or roughly one hour and fifteen minutes per week. Even during the month in which attorney Lagos devoted the largest amount of time to this matter— December 2017—he spent less than thirty hours in total on this litigation. This case, which involved only filing the complaint, responding a motion to dismiss and no apparent discovery prior to being resolved, could not be said to have reasonably precluded plaintiffs' counsel from other employment. Consideration of this factor cuts against application of a multiplier to the attorneys' fee award.

5. The Contingent Nature of the Case

Finally, the court accounts for the contingent nature of this case. This case was taken entirely on a contingency basis, making the award of fees uncertain. Consideration of this factor therefore certainly weighs in favor of a multiplier. However, civil rights actions such as this one are almost always undertaken by attorneys on a contingency basis. Consideration of this factor, standing alone, cannot compel the application of a multiplier to the attorneys' fee award.

Having considered all of the relevant factors, the court declines plaintiffs' request to apply a multiplier to the attorneys' fee award in this case.

**CONCLUSION**

For the reasons set forth above:

1. Plaintiffs' motion for attorneys' fees (Doc. No. 30) is granted in part;
2. Defendants are directed to pay plaintiffs attorneys' fees and costs totaling $27,676.25, broken down as follows:
    a. The court awards fees to Mr. Lagos in the amount of $26,160.00, accounting for 65.4 hours expended at a rate of $400.00 per hour;
    b. The court awards fees to Mr. Schmidt in the amount of $660, accounting for 2.2 hours expended at a rate of $300.00 per hour;

/////

|   |   |
|---|---|
| 1 |    c. The court awards fees to Ms. Hubbs in the amount of $456.25, accounting for |
| 2 |      3.65 hours expended at a rate of $125.00 per hour; |
| 3 |    d. The court awards costs in the amount of $400; and |
| 4 |   3. The Clerk of the Court is directed to close this case. |

IT IS SO ORDERED.

Dated:  **December 13, 2018**    _____
                 UNITED STATES DISTRICT JUDGE